Filed 5/8/13; part. pub. 5/24/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| KENNETH BLUFORD, | C066074 |
| Plaintiff and Appellant, | (Super. Ct. No. CV028541) |
| v. | |
| SAFEWAY STORES, INC., | |
| Defendant and Respondent. | |

This appeal concerns the trial court's denial of class certification in a wage and hour action. Plaintiff Kenneth Bluford sought to certify a class of plaintiffs in his action against his employer, defendant Safeway, Inc. He claims Safeway violated statutory and regulatory laws requiring it to provide its employees with paid rest periods, earned meal periods, and sufficiently itemized wage statements.

The trial court denied plaintiff's motion to certify a class. It ruled individual issues predominated over common issues on the rest period and meal period claims, and that plaintiff failed to allege a common injury resulting from the inadequate wage statements.

1

We reverse. Insufficient evidence supports the trial court's ruling, as common issues predominate over individual issues, and plaintiff in fact alleged a common injury resulting from the wage statements. We order the trial court to grant plaintiff's motion.

FACTS

Since 2003, Safeway has managed the operations of a distribution center in Tracy. Plaintiff is employed by Safeway as a truck driver who works out of the distribution center. He and the other drivers he sought to certify as a class deliver goods from the distribution center to Safeway stores in northern California and Nevada.[1]

Safeway's truck drivers are represented by General Teamsters Local 439, which has negotiated successive collective bargaining agreements with Safeway. The agreements included provisions regarding rest periods and meal periods. Under those provisions, Safeway was required to provide two paid rest periods of 15 minutes each for every eight- or 10-hour shift worked. Employees received an additional 15-minute paid rest period if they worked in excess of two hours overtime.

Also under the agreements, drivers were to take a 30-minute meal period on their own time. Drivers were required to take the meal period no later than five hours after their regular shift began. The first collective bargaining agreement, which ran from 2003 to 2008, did not require drivers to take a second meal period if the driver worked more than 10 hours. The second agreement, however, effective September 28, 2008, to 2011, required drivers to take a second meal period in addition to the first meal period if the

---

[1]     Prior to 2003, the distribution center was operated by a third party, Summit Logistics, Inc., for Safeway's benefit. In *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949 (*Cicairos*), we reversed the trial court's grant of summary judgment on a wage and hour claim in favor of Summit Logistics. We concluded the evidence established Summit Logistics did not provide the plaintiffs, truck drivers formerly employed by Summit Logistics, with their required meal periods, paid rest periods, and adequately itemized wage statements. In 2003, when Safeway took over control of the distribution center, it continued to utilize the same compensation structure and policies we subsequently found wanting in *Cicairos* until after that decision's release.

2

driver worked more than 10 hours. The driver could waive this second meal period if he had worked no more than 12 hours and had taken the first meal period.

The collective bargaining agreements also obligated Safeway to utilize what it calls an activity based compensation system to determine the drivers' wages. Pay was calculated based on (1) mileage rates applied according to the number of miles driven, the time of day the trips were taken, and the locations where the trips began and ended; (2) fixed rates for certain tasks (e.g., rates for number of pallets delivered and picked up); (3) an hourly rate for a predetermined amount of minutes for certain tasks (e.g., paid for 10 minutes at hourly rate for set-up time at each store); and (4) an hourly rate for delays (e.g., breakdowns, impassable highways, time spent at scales, or other causes beyond the driver's control).

Drivers logged their mileage and activities for each trip manually on trip sheets. They also logged their activities into an onboard computer system known as the XATA system. Through XATA, Safeway tracked the drivers' moves, including their stops. The drivers input codes into XATA to record specific reasons for delays. Neither the trip sheets nor the XATA system, however, provided a place or means to record meal or rest periods.

Beginning in 2005, after we issued our decision in *Cicairos*, Safeway took additional steps to ensure its drivers took their breaks. In December 2005, it required drivers to note on their daily trip sheets when they took their meal periods. In July 2006, it required each driver to sign a certification on the back of the trip sheets certifying he was "authorized and permitted" to take his rest periods, and that he took his meal periods. In 2007, Safeway informed drivers that failing to sign the certification on the trip sheet could result in discipline.

At all relevant times, Safeway provided the drivers with a "driver trip summary -- report of earnings" and an "earnings statement" with each paycheck. The driver trip summary listed each component of a driver's pay, and the quantity of each component for

3

which he was being paid. The components and quantities were paid based on the rates set in the collective bargaining agreements. The earnings statement itemized the actual components, and it expressed them in an equivalent hourly pay. However, neither the driver trip summary nor the earnings statement stated the rates by which drivers were compensated for their mileage.

Plaintiff filed his complaint as a class action in 2006. He alleged Safeway violated pertinent provisions of the Labor Code and Industrial Welfare Commission wage orders by failing to provide him and other similarly situated employees with paid rest periods, meal periods, and sufficiently itemized wage statements. Specifically, plaintiff contends Safeway violated the law by (1) not paying for rest periods nor specifically accounting for them on wage statements; (2) (a) not providing until 2006 a second meal period for drivers who worked more than 10 hours a day, and (b) not making adequate efforts until 2006 to relieve drivers of their duties for any required meal period; and (3) issuing inadequate wage statements omitting essential information that would allow a driver to determine if he had been paid the proper amount of wages owed him under the activity based compensation system.

In April 2009, plaintiff filed his motion for class certification. He sought to certify three subclasses: those drivers denied paid rest periods; those denied required meal periods; and those who received inadequate wage statements. The trial court denied the motion in July 2010. It found class members' individual reasons for not taking rest or meal periods predominated over common issues. It believed it could resolve the rest and meal period claims only by inquiring into each episode where a class member did not take a break. As to the wage statement claim, the court ruled plaintiff could not show common issues because class members did not suffer any common injury from the wage statements.

Plaintiff contends the trial court erred in refusing to certify the class, subdivided into three subclasses.

4

DISCUSSION

I

*Standard of Review*

Our Supreme Court recently described the standard of review we are to apply. "Drawing on the language of Code of Civil Procedure section 382 and federal precedent, we have articulated clear requirements for the certification of a class. The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives. (Code Civ. Proc., § 382; *Fireside Bank* [*v. Superior Court* (2007) 40 Cal.4th 1069,] 1089; *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435; *City of San Jose* [*v. Superior Court* (1974) 12 Cal.3d 447,] 459.) 'In turn, the "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." ' (*Fireside Bank*, at p. 1089, quoting *Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470.)

"Here, only a single element of class suitability, and a single aspect of the trial court's certification decision, is in dispute: whether individual questions or questions of common or general interest predominate. The 'ultimate question' the element of predominance presents is whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' (*Collins v. Rocha* (1972) 7 Cal.3d 232, 238; accord, *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326.) The answer hinges on 'whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment.' (*Sav-On*, at p. 327.) A court must examine the allegations of the complaint and supporting declarations (*ibid.*) and consider whether

5

the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible.[2] 'As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.' (*Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 916; accord, *Knapp v. AT&T Wireless Services, Inc.* (2011) 195 Cal.App.4th 932, 941.)

"On review of a class certification order, an appellate court's inquiry is narrowly circumscribed. 'The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." [Citation.] A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions. [Citations.]' (*Fireside Bank v. Superior Court, supra*, 40 Cal.4th at p. 1089; see also *Hamwi v. Citinational-Buckeye Inv. Co.* (1977) 72 Cal.App.3d 462, 472 ['So long as [the trial] court applies proper criteria and its action is founded on a rational basis, its ruling must be upheld.'].) Predominance is a factual question; accordingly, the trial court's finding that common issues predominate generally is reviewed for substantial evidence. (*Sav-On Drug Stores, Inc. v. Superior Court, supra*, 34 Cal.4th at pp. 328–329.) We must '[p]resum[e] in favor of the certification order . . . the existence of every fact the trial

---

**2** "As one commentator has put it, 'what really matters to class certification' is 'not similarity at some unspecified level of generality but, rather, dissimilarity that has the capacity to undercut the prospects for joint resolution of class members' claims through a unified proceeding.' (Nagareda, *Class Certification in the Age of Aggregate Proof* (2009) 84 N.Y.U. L.Rev. 97, 131.)

court could reasonably deduce from the record . . . .' (*Id*. at p. 329.)" (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021-1022 (*Brinker*).)

## II

### *Certification of Rest Period Subclass*

Plaintiff contends the trial court erred in refusing to certify the rest period subclass. He argues his theory of recovery is based on Safeway's policies and procedures that apply uniformly to all drivers. He asserts Safeway did not pay its drivers for rest periods because its compensation system, based on miles driven and the performance of specific tasks, did not account for rest periods or provide an ability to be paid for them. Safeway also provided no means by which an employee could verify he was paid for his rest periods. He argues these issues, common to each driver, predominate, and thus the trial court erred by concluding individual issues would predominate.

We agree with plaintiff. The trial court's denial of the rest period certification class is not supported by substantial evidence. Issues common to all drivers and Safeway predominate plaintiff's claim for rest period compensation. Indeed, the common proof demonstrates Safeway did not separately compensate drivers for their rest periods in the manner required by California law. Because the only issue remaining to be resolved for this class is damages, the class is to be certified.

Under Industrial Welfare Commission wage orders, employers are required to "authorize and permit all employees to take rest periods" at the rate of at least 10 minutes for every four hours worked. (Cal. Code Regs., tit. 8, §§ 11070, subd. 12; 11090, subd. 12.) "Authorized rest periods shall be counted as hours worked for which there shall be no deduction from wages." (*Ibid*.) Safeway's collective bargaining agreements required it to provide two 15-minute, paid rest periods for each eight- or 10-hour shift worked.

Plaintiff claims Safeway was required to compensate drivers separately for their rest periods, and that it did not because its compensation system, based on miles driven

7

and specific tasks performed, did not include rest periods as an item that would be reported by drivers and compensated.

Safeway asserts it complied with the wage order. It argues the wage order requires only that pay not be deducted for rest periods, and Safeway never deducted pay from its drivers for taking rest periods. It claims the wage order does not require employers who use a piece-rate or incentive-based compensation system like Safeway's to put employees on the clock just to pay for rest periods. Rather, Safeway claims, pay for rest periods is considered part of the overall piece-rate compensation.

Even if pay for rest periods is not considered part of the piece-rate compensation, Safeway claims its policy, contained in the collective bargaining agreements, was to provide paid rest periods, and that in fact it paid drivers for their rest periods. Safeway asserts the mileage rates negotiated in the collective bargaining agreements included paid time for rest periods.

There is no doubt Safeway was required to provide the drivers with paid rest periods. Employees are entitled to "a paid 10-minute rest period per four hours of work. [Citation.]" (*Murphy v. Kenneth Cole Productions, Inc*. (2007) 40 Cal.4th 1094, 1104.) The wage order's requirement not to deduct wages for rest periods presumes the drivers are paid for their rest periods. And, as Safeway acknowledges, its policy was to provide paid rest periods.

However, under the rule of *Armenta v. Osmose, Inc*. (2005) 135 Cal.App.4th 314, 323 (*Armenta*), rest periods must be separately compensated in a piece-rate system. Rest periods are considered hours worked and must be compensated. (Cal. Code Regs., tit. 8, §§ 11070, subd. 12; 11090, subd. 12.) Under the California minimum wage law, employees must be compensated for each hour worked at either the legal minimum wage or the contractual hourly rate, and compliance cannot be determined by averaging hourly compensation. (*Ibid.*; *Sheppard v. North Orange County Regional Occupational Program* (2010) 191 Cal.App.4th 289, 297, fn. 5.)

8

Thus, contrary to Safeway's argument, a piece-rate compensation formula that does not compensate separately for rest periods does not comply with California minimum wage law. (See *Reinhardt v. Gemini Motor Transport* (E.D. Cal. 2012) 869 F.Supp.2d 1158, 1168 [piece-rate pay system that did not separately pay truck drivers for non-driving duties violates California law requiring compensation for each hour worked]; *Cardenas v. McLane FoodServices, Inc.* (C.D. Cal. 2011) 796 F.Supp.2d 1246, 1252 [piece-rate pay system that did not separately pay truck drivers for non-driving duties and rest periods violates California law requiring compensation for each hour worked].)

There is no dispute that Safeway's activity based compensation system did not separately compensate drivers for their rest periods. Pay was calculated based on mileage rates applied according to the number of miles driven, the time when the trips were made, and the locations where the trips began and ended. None of these components directly compensated for rest periods. Driver pay was also based on fixed rates for certain tasks and hourly rates for other tasks and delays. There is no dispute that none of these fixed rates were applied to rest periods.

Safeway counters that although it did not separately compensate for rest periods, the activity based compensation system did include compensation for rest periods. John Flanigan, one of the designers of the compensation system, testified in a deposition that the system's mileage rates and the activity rates were designed to include payment for expected rest periods. Even if that is so, it is akin to averaging pay to comply with the minimum wage law instead of separately compensating employees for their rest periods at the minimum or contractual hourly rate, and, as we have explained, it is not allowed under California labor law.

Safeway hopes to raise a defense it claims requires individual resolution for each driver, but resolution of that issue is unnecessary under controlling law. Safeway asserts plaintiff's theory of recovery is grounded in an interpretation of the collective bargaining agreements and their mileage rates, which provide for the drivers' rest periods and which

9

allegedly include compensation for them. As a result, Safeway argues plaintiff's claim is preempted by the federal Labor Management Relations Act (see 29 U.S.C. § 185). That act may preempt state law claims that are substantially dependent on an analysis of a collective bargaining agreement. (*Department of Fair Employment & Housing v. Verizon California, Inc.* (2003) 108 Cal.App.4th 160, 165.)

By concluding Safeway was required to separately compensate for rest periods and was precluded from building compensation into its mileage rates for rest periods, we have foreclosed any need for the trial court to interpret the collective bargaining agreements. Safeway does not dispute that the drivers' rest periods were not separately compensated. Thus, on remand, the only issue remaining to be decided on the rest period claim is the drivers' damages. Because Safeway's liability can be determined by law and facts common to all members of the class, the class will be certified even if the class members must individually prove their damages. (*Hicks v. Kaufman & Broad Home Corp. supra,* 89 Cal.App.4th at p. 916.)

Safeway asserts our holding will severely disrupt piece-rate pay systems throughout the state. Yet Safeway itself already pays drivers an hourly rate for certain defined and recorded tasks. There is no evidence that its compensation system will collapse by complying with controlling law and having to include one additional element -- rest periods -- that must be separately paid at an hourly rate.

The trial court's conclusion that individual issues will predominate is not supported by substantial evidence. Plaintiff's theory of recovery does not concern the drivers' subjective reasons for taking or not taking a rest period. Rather, it concerns Safeway's compensation system and its failure to separately compensate drivers for their rest periods. All of the disputes on the merits of this claim involve common evidence and argument, and individual damages. The rest period subclass must be certified.

III

*Certification of Meal Period Subclass*

10

Plaintiff contends the trial court erred by refusing to certify the subclass of drivers on his meal period claims. He raises two grounds of liability. He first asserts Safeway as a matter of policy failed to provide a required second meal period, at least until 2006, for drivers who worked shifts of 10 or more hours. Second, he claims Safeway did not take sufficient action to relieve drivers of work duty so they could take a meal period, such as recording and scheduling meal periods, correcting for drivers not taking meal periods, and paying meal period premiums to drivers who missed their meal periods. Plaintiff claims common issues of law and fact will predominate both of these grounds for relief, making them amenable to class adjudication.

We agree with plaintiff that his first ground for relief, Safeway's alleged failure as a matter of policy to provide a second meal period, involves common issues of law and fact and thus is suitable for class certification. The trial court's conclusion that individual issues would predominate is not supported by substantial evidence. Because we conclude the meal period class must be certified for this ground, we need not address plaintiff's second ground. The issue for the trial court was whether any of plaintiff's meal period theories of recovery were amenable to class treatment. (*Brinker, supra*, 53 Cal.4th at p. 1032.) Having found one theory the trial court erred in finding not amenable, we may reverse its order on that basis.

Labor Code section 512, subdivision (a), and the applicable wage orders (Cal. Code Regs., tit. 8, §§ 11070, subd. 11; 11090, subd. 11) require an employer to provide meal periods to its employees. In general, an employer must provide at least one 30-minute meal period to an employee who works more than five hours per day. If an employee works more than 10 hours per day, the employer must provide a second meal period of at least 30 minutes, except that if the employee works no more than 12 hours,

11

he and the employer may waive the second meal period so long as the first meal period was not waived. (Lab. Code, § 512, subd. (a).)[3]

An employer satisfies its obligation to provide the required meal periods "if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so. . . . [¶] On the other hand, the employer is not obligated to police meal breaks and ensure no work thereafter is performed. Bona fide relief from duty and the relinquishing of control satisfies the employer's obligations, and work by a relieved employee during a meal break does not thereby place the employer in violation of its obligations and create liability for premium pay . . . ." (*Brinker, supra*, 53 Cal.4th at pp. 1040-1041.)

Plaintiff alleges Safeway's meal period policy until 2006 did not include the required second meal period for drivers who worked more than 10 hours. He claims the collective bargaining agreements contain Safeway's only statements of policy authorizing meal periods, and the first of those agreements, as noted earlier, did not provide for second meal periods.

Safeway acknowledges the first collective bargaining agreement did not address second meal periods. However, it introduced evidence at the trial court it claims establishes that Safeway did in fact authorize second meal periods for employees who worked more than 10 hours. Three dispatchers, who served as the drivers' daily

---

**3**     Labor Code section 512, subdivision (a) reads: "An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived."

12

supervisors, declared they provided enough time in their assignments for drivers to take a second meal period if their work would exceed 10 hours. One driver, when asked in a deposition if he could stop for a second meal period if he wanted, said he could stop for three or four. Based on this evidence, Safeway asserts plaintiff's claim is not suitable for class adjudication because there was no basis for the trial court to find that Safeway uniformly failed to provide second meal periods.

This evidence, however, is insufficient. "An employer is required to authorize and permit the amount of rest break time called for under the wage order for its industry. If it does not -- if, for example, it adopts a uniform policy authorizing and permitting only one rest break for employees working a seven-hour shift when two are required -- it has violated the wage order and is liable." (*Brinker, supra*, 53 Cal.4th at p. 1033.) Safeway's evidence does not establish Safeway in fact authorized and permitted second meal periods to drivers who worked longer than 10 hours. There is no indication the drivers were aware they were entitled to take a second meal period if their shifts exceeded 10 hours.

And in fact, other evidence in the record indicates Safeway as a matter of policy did not authorize second meal periods. James Williams, Safeway's transportation superintendent, declared that from 1996 until October 2004, he regularly provided a letter instructing on meal periods to each driver who worked out of the Tracy distribution center. The letter informed the drivers: "You are entitled to a 30 min. break and 2 fifteen min. breaks, this time is yours and it must be logged off duty." The letter did not inform the drivers they were also entitled to a second meal period if their shift exceeded 10 hours.

Williams distributed the letter often. He gave the letter to each new driver hired by Safeway. In August 2003, when Safeway took over the distribution center, he gave a copy of the same letter to every driver. He also posted the letter in the drivers' break

13

room at the distribution center. In addition, he periodically instructed the dispatchers to pass out the letter during a talk with the drivers at each dispatch time throughout the day.

Thus, at least through October 2004, the drivers were routinely told by Safeway in the form of company policy that they were entitled to only one meal period. The collective bargaining agreement provided only one meal period, and the policy enforced by Safeway's transportation superintendent provided only one meal period. This is sufficient evidence of a uniform policy applied to a group of employees in violation of the wage and hour laws, and thus the claim against it is amenable to class treatment.

No substantial evidence supports the trial court's conclusion that this claim raises predominantly individual issues. No individualized issue of waiver of a second meal period ever arises if a driver was not aware he was authorized to take the break. (*Brinker, supra*, 53 Cal.4th, at p. 1033.) Resolving this claim will involve common evidence and proof, and thus can be accomplished most efficiently as a class action. The meal period subclass of drivers must be certified.

IV

*Certification of Wage Statement Subclass*

Plaintiff claims Safeway failed to provide wage statements, or paystubs, that comply with California law. He argues the statements do not enable employees to verify they have been properly paid, as required by Labor Code section 226.

The trial court determined plaintiff could not show commonality on this issue because "class members did not suffer any common injury from allegedly defective wage statements. Plaintiff does not allege that any defect in the wage statements deprived drivers of wages owed, and he has alleged no other common injury."

Plaintiff claims the trial court's ruling is in error because workers suffer a common injury when common elements of a wage statement cause employees difficulty in reconstructing pay records and require them to engage in mathematical computations to determine whether they were in fact paid for all hours worked. We conclude the trial

14

court's holding is not supported by substantial evidence, as plaintiff alleges common injury.

Labor Code section 226 requires employers to furnish employees "an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee [except for an exempt, salaried employee], (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis . . . , and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee . . . ." (Lab. Code, § 226, subd. (a).)

An employee suffering injury as a result of an employer's knowing and intentional failure to provide the required statement may recover actual damages or a statutory rate of damages. (Lab. Code, § 226, subd. (e).) "While there must be some injury in order to recover damages, a very modest showing will suffice." (*Jaimez v. DAIOHS USA, Inc.* (2010) 181 Cal.App.4th 1286, 1306.) " 'These injuries included the possibility of not being paid overtime, employee confusion over whether they received all wages owed them, difficulty and expense involved in reconstructing pay records, and forcing employees to make mathematical computations to analyze whether the wages paid in fact compensated them for all hours worked.' " (*Ibid.*, quoting *Elliot v. Spherion Pacific Work, LLC* (C.D. Cal 2008) 572 F.Supp.2d 1169, 1181.) Both plaintiff and Safeway agree "the 'injury' [Labor Code] Section 226 was intended to prevent is the employee's inability to determine whether he has actually been paid for all work he performed."

Plaintiff alleges Safeway's wage statements do not allow a driver to determine whether the wages he was paid compensated him for all of the work he performed. Although the drivers' pay is based primarily on miles driven, the statements do not identify the rates applied to the mileage. Because the wage statements do not disclose which rates were applied to any of the miles driven, a driver, plaintiff claims, cannot determine whether he was paid accurately without engaging in cumbersome

15

mathematical calculations. The driver must refer to his individual trip sheets and the mileage rates contained in the collective bargaining agreements to determine if he was paid correctly for each trip. The trip sheets record the times, starting and ending locations, and distances of each segment of a trip. The collective bargaining agreements contain over 2,000 different rates that are applied based on the times and starting and ending locations of each segment of each trip. The driver must apply these rates to the information derived from the trip sheet for each segment of each trip in order to determine the pay he earned for each trip and whether he was in fact paid the correct amount. Moreover, plaintiff alleges, Safeway updated the mileage rate annually without providing drivers with the new rates. Having to recalculate mileage pay from sources outside the wage statement, plaintiff argues, is the type of injury Labor Code section 226 was enacted to prevent, and it is an injury common to all drivers due to the structure of Safeway's wage statements.

Safeway does not dispute the calculations the employees must do in order to verify their mileage pay. Rather, it argues plaintiff's allegations are only that the wage statements are inaccurate, and no injury results from mere inaccuracy. (See *Price v. Starbucks Corp.* (2011) 192 Cal.App.4th 1136, 1142-1143.) This argument misstates plaintiff's claim. Plaintiff does not claim the statements are merely inaccurate. He claims he and his fellow drivers cannot determine whether the statements are accurate without relying on other documents to perform calculations because the statements do not include all of the information Labor Code section 226 requires.

Plaintiff's argument goes to the structure of the wage statements. As a result, his and the other drivers' claims of injury on account of the wage statements will be resolved by means of common proof. The structural omissions in the wage statements, and their alleged violation of Labor Code section 226, are, like employer policies, the types of matters best resolved by class adjudication.

16

Safeway asserts there is no common injury. It claims that in this instance, injury can be determined only on an individualized basis to learn whether each driver in fact had to engage in extra and cumbersome calculations to verify his mileage pay. It relies on deposition testimony by various drivers to assert that 75 percent of the drivers in fact were able to verify their mileage pay from the wage statements and thus suffered no injury.

Plaintiff counters that the testimony cited by Safeway does not support its contention. The drivers cited by Safeway testified they could calculate their pay, but could do so only by relying on other sources besides the wage statements, such as their trip sheets. They also claimed these extra calculations took from 10 to 20 minutes.

We need not engage in this evidentiary battle. Plaintiff's allegation of deficient wage statements applies uniformly to every wage statement issued by Safeway to its drivers. None of them list the rates by which the drivers' mileage pay was calculated. If Labor Code section 226 requires wage statements to include those rates in wage statements, perhaps as part of its requirement to include the number of piece-rate units earned and the piece-rate applied, then plaintiff has alleged sufficient common injury for class adjudication. All of the drivers received wage statements that contained the identical alleged defects and allegedly caused the same injury.

The trial court's conclusion that plaintiff failed to allege common injury for its wage statement subclass is not supported by the evidence. The wage statement subclass must be certified.

## DISPOSITION

The order denying plaintiff's motion for class certification is reversed. The matter is remanded to the trial court with instructions to grant plaintiff's motion to certify the

17

class, subdivided into the three subclasses.  Costs on appeal are awarded to plaintiff.
(Cal. Rules of Court, rule 8.278, subd. (a).)


                                       <u>     NICHOLSON    </u>, Acting P. J.


We concur:


<u>      MAURO     </u>, J.


<u>      HOCH      </u>, J.

Filed 5/24/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| KENNETH BLUFORD, | C066074 |
| Plaintiff and Appellant, | (Super. Ct. No. CV028541) |
| v. | ORDER OF PARTIAL PUBLICATION |
| SAFEWAY STORES, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Joaquin County, Carter P. Holly, Judge. Reversed with directions.

Weinberg, Roger & Rosenfeld, David A. Rosenfeld, Theodore Franklin, Caren P. Sencer, and Jannah V. Manansala for Plaintiff and Appellant.

Payne & Feers, James L. Payne, Jeffrey K. Brown, and James R. Moss, Jr., for Defendant and Respondent.

THE COURT:

For good cause it now appears that the opinion in the above-captioned case filed herein on May 8, 2013, should be published in the Official Reports, with the exception of parts III and IV of the Discussion.  It is so ordered.

FOR THE COURT:


     NICHOLSON    , Acting P. J.


     MAURO      , J.


     HOCH       , J.