Filed 10/21/25; certified for publication 11/18/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| GUSTAVO MORA, et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>C.E. ENTERPRISES, INC.,<br>et al.,<br><br>    Defendants and Respondents. | 2d Civ. No. B337830<br>(Super. Ct. No. 56-2018-<br>00521275-CU-OE-VTA)<br>(Ventura County) |

Appellants Gustavo Mora and Mohammad Hanif were formerly employed as service technicians by respondent C.E. Enterprises, Inc., a Simi Valley auto dealership doing business as First Honda, First Auto Group, and First Automotive Group (First Honda).  Appellants sued First Honda[1] for alleged

---

[1] Appellants' complaint also named respondents Ed Estey (the president and owner of First Honda) and Darrell Coletto (the former co-owner of First Honda) as individual defendants. Because the claims against Estey and Coletto derive solely from

violations of the Labor Code[2] and the Unfair Competition Law (Bus. & Prof. Code, § 17200), and also asserted a claim on behalf of themselves and other First Honda employees under the Private Attorney General Act (PAGA) (§ 2698 et seq.).[3]  The trial court entered judgment in First Honda's favor on all claims following a bench trial.

Appellants contend the court erred in finding they failed to prove that First Honda's compensation plan for service technicians violates the "no borrowing rule" as provided in *Gonzalez v. Downtown LA Motors, LP* (2013) 215 Cal.App.4th 36 (*Gonzalez*), or otherwise fails to comply with section 226.2. Appellants also contend they presented substantial and undisputed evidence that they were not fully compensated for all hours worked, and that the court erred in entering judgment in First Honda's favor on their PAGA claim.  We affirm.

*First Honda's Hourly Pay Plan For Service Technicians*

Appellant Mora was employed by First Honda from in or around January 2011 until August 26, 2021, first as a lube technician and later (and at all relevant times) as a service technician.  Appellant Hanif was employed by First Honda as a service technician from July 25, 2014, until October 2019.

---

their status as owners and agents of First Honda, we collectively refer to all three respondents as First Honda.

[2] All undesignated statutory references are to the Labor Code.

[3] PAGA was substantially amended effective July 1, 2024. All references to PAGA refer to the prior version of the statute in effect when appellants filed their amended complaint.

2

Effective December 1, 2014, First Honda adopted an hourly pay plan for service technicians (the hourly pay plan or First Honda's hourly pay plan) that pays the technicians at least the applicable minimum and overtime wages for all hours recorded on the timekeeping system.  Because service technicians are required to use their own tools, they are paid double the minimum wage for all hours recorded on the biometric clock.

Prior to First Honda's adoption of the hourly pay plan, service technicians were paid on a piece-rate basis based on the "flag" hours they recorded for completing service orders.  "[A] piece rate basis . . . differs from an hourly rate method in that technicians are paid primarily on the basis of repair tasks completed." (*Gonzalez, supra*, 215 Cal.App.4th at p. 41.)  Flag hours are fixed amounts of time assigned for completing service tasks "and are intended to correspond to the actual amount of time a technician would need to perform the task." (*Ibid.*)  The hourly pay plan was adopted with guidance from the California New Car Dealers Association, after the piece-rate pay plan was deemed invalid under *Gonzalez*.  (See *post*, pp. 15-16.)

Under First Honda's hourly pay plan, service technicians have the opportunity to take a one-hour meal period.  They are also given the opportunity to take rest periods for which they do not clock out for and for which they are compensated at their hourly rates of pay, i.e., double the minimum wage.  Employee timecards from the biometric timekeeping system reflect all hours worked and show when the employee clocks in and out at the beginning and end of the day and for their meal period. Employees are allowed to make any necessary corrections to their timecards on timecard correction forms.

In addition to paying double the minimum wage for all hours recorded on the biometric clock, First Honda's hourly pay plan also provides service technicians the opportunity to earn "flag bonus pay" if the flag hours they separately record, multiplied by the dollar amount of their assigned flag rate, exceeds their regular and overtime hourly earnings. All service technicians are assigned a flag rate in their individual hourly pay plans and the rate can vary among technicians. The hourly plan states that "[f]lag hour earnings represent compensation for work above and beyond a median, expected level of performance of repair jobs and non-repair activity/duties applying to [the] Employee."[4]

On November 19, 2014, Mora and Hanif met with their supervisor, who explained the hourly pay plan to them, and they signed their acknowledgments of that plan. Appellants' subsequent monthly pay statements included the total flag hours they accrued and any resulting bonus paid, and expressly identified each of these items as "flag hours" and "bonus."

*Appellants' Complaint, PAGA Notice, And Amended Complaint*

In December 2018, appellants filed a complaint against First Honda alleging counts for (1) failing to pay overtime wages, in violation of sections 510 and 1194 and Wage Order No. 4-2001 (Wage Order 4); (2) failing to pay minimum wage, in violation of section 1182 and Wage Order 4; (3) failing to provide meal and

---

[4] Other job positions at First Honda are compensated differently. For example, lube technicians are not paid double the minimum wage and do not typically flag enough hours to earn a bonus. Car salespeople and service writers work under commission-based payment plans.

4

rest periods, in violation of sections 226.7 and 512 and Wage Order 4; (4) failing to reimburse employee expenses, in violation of section 2802; (5) failure to provide accurate wage statements, in violation of section 226; (6) failing to make available personnel and payroll files, in violation of sections 226 and 1198.5; and (7) retaliating against them for exercising their rights, in violation of section 98.6.  The complaint also included a claim for unlawful business practices in violation of the Unfair Competition Law.

Appellants subsequently filed an amended complaint adding a PAGA claim of behalf of appellants and "other employees of" First Honda.  The PAGA claim reiterated the allegations in counts 1 through 5, and further alleged that First Honda had failed to pay full wages when due in violation of section 204.   Appellants also alleged they had "provided written notice to the LWDA [Labor and Workforce Development Agency] and [First Honda] of the specific provisions of the Labor Code they contend were violated, and the theories supporting their contentions," and attached a copy of their written PAGA notice as an exhibit.

Appellants identify themselves in the PAGA notice as "'Service Technicians'" who "perform automotive diagnostic, repair, and maintenance tasks for First Honda" and seek relief on behalf of themselves "and all others similarly situated[.]"  The notice asserted among other things that First Honda required appellants and other aggrieved employees to work overtime hours "'off the clock', but failed to pay them one-and-one-half times their regular rate of pay for all overtime hours worked.  In fact, because California does not allow wage averaging to satisfy minimum wage standards, no sums whatsoever were paid for these hours worked 'off the clock.' . . .   Also, because [First

5

Honda] failed to include commission wages in calculating the regular rates of pay for overtime purposes, even the overtime wages that were paid to [appellants] and similarly Aggrieved Employees were less than one-and-one-half their actual regular rates of pay."

*Summary Adjudication Motions*

The court initially ordered the parties to arbitrate the case pursuant to the parties' stipulation, but subsequently withdrew the matter from arbitration at appellants' request after First Honda failed to timely pay its arbitration fees. In January 2023, appellants filed a motion requesting that the court summarily adjudicate (1) whether First Honda's hourly pay plan violates the "no borrowing rule" set forth in *Gonzalez*; (2) whether the hourly pay plan violates section 226.2; and (3) whether First Honda's monthly pay statements comply with sections 226 and 226.2. The motion asserted that "[w]hile there are many issues of triable facts related to damages that would preclude summary adjudication as to any complete cause of action, resolving the legal disputes outlined herein will assist in narrowing the issues and amount of evidence to be presented at trial, and will likely facilitate settlement. Plaintiffs believe that there is no triable issue of fact regarding the facts relevant to the legal issues being addressed herein." First Honda also filed a summary adjudication motion based on the same issues, but asserted that the resolution of the issues warranted a grant of summary adjudication in their favor on count 2 of the amended complaint, i.e., the failure to pay minimum wage.

In denying First Honda's motion, the court reasoned: "[T]he main dispute between the parties is as to whether First Honda's Pay Plan . . . was lawful or unlawful under California

law, and substantial portions of the parties' Briefs are devoted to arguing this issue. However, for purposes of the Defendants' present motion, the Court need not resolve the question of the lawfulness of the Pay Plan - even assuming *arguendo* that Defendants' Pay Plan was lawful - there is a triable issue of fact as to whether Defendants consistently paid Plaintiffs in conformity with their timekeeping policies and Pay Plan because there is a triable issue of fact as to whether First Honda required its technicians to work 'off the clock.'"

In its subsequent order denying appellants' motion for summary adjudication, the court first noted that the referenced issues were not summarily adjudicable because their resolution would not completely dispose of any cause of action, affirmative defense, claim for damages, or issue of duty. (See Code Civ. Proc., § 437c, subd. (f)(1).) "In an effort to be helpful," the court nevertheless went on to find that "First Honda's Pay Plan does not violate the 'no borrowing' rule regarding minimum wage requirements . . . because a [service] technician's 'regular compensation' under the Plan – which the technician always received – is based on an hourly rate equal to or greater than twice the minimum wage times all hours actually worked. "

The court also found that First Honda's hourly pay plan does not violate section 226.2. The court reasoned: "Assuming *arguendo* that section 226.2(a) applies to First Honda's [service] technicians, section 226.2(a)(7) also applies: namely, because the Pay Plan expressly provides that First Honda 'Pays an hourly rate of at least the applicable minimum wage for all hours worked' in addition to any flag hour bonus, and therefore complies with section 226.2, subdivisions (a)(1) and (a)(4). Plaintiffs' only argument as to why First Honda is not entitled to

7

invoke section 226.2(a)(7) is that First Honda's Pay Plan improperly 'borrows' from technicians' flag pay to cover minimum wage. [Citation.] However, the Court has rejected Plaintiffs' 'borrowing' argument for the reasons previously stated." The court added that it could not grant appellants' request to summarily adjudicate whether First Honda's pay statements complied with sections 226 and 226.2 because the request "fails to specify both (1) which paystubs are at issue; and (2) what deficiencies Plaintiffs are seeking to have summarily adjudicated."

*Trial, Statement Of Decision, And Judgment*

Appellants testified at trial on their own behalf and also presented the testimony of First Honda's controller; First Honda's former warranty administrator; Estey; and Peter Rodby, a clerk at the law firm of appellants' counsel.

Rodby testified that he had reviewed thousands of pay statements for various First Honda employees, all of which were eventually admitted at trial pursuant to the parties' stipulation. Those statements included 441 pay statements for employees of First Honda's sales department. Of the 396 pay statements for sales employees that included payments identified as commission, 126 did not include any pay for rest periods. In addition, 386 of the pay statements for sales employees indicated that the employee worked either more than 8 hours in a day or 40 hours in a week, but did not reflect any payment of overtime wages, i.e., one-and-half times their normal rate of hourly pay. However, Rodby did not have any knowledge of the pay plan for commissioned sales employees or review any of the employees' biometric time entries to determine if they were eligible for rest periods. Moreover, he did not know whether sales employees

8

received an additional document with their pay statements that included other information regarding their pay. First Honda's controller testified that sales employees always receive a "supplemental sheet" along with their pay statement that provides "the commission, hours, rest breaks, the number of them, all of that."

Accordingly, Rodby agreed with defense counsel's assessment that he was "unable to testify with personal knowledge as to whether the sales employees at First Honda were paid accurately pursuant to their pay plans with the company[.]" Although he also found numerous instances in pay statements of service technicians (including appellants) where the listed hourly overtime rate did not match up with the listed overtime compensation, he did not perform any calculations to determine if any of the employees had actually been paid *more* than that to which they were entitled.

The defense case primarily consisted of the expert testimony of Dr. Jospeh Krock, Ph.D. Dr. Krock reviewed a sampling of time and pay records and concluded that (1) First Honda's service technicians receive a bonus when the value of their flag hours exceeds their regular and overtime hourly wages; (2) the service technicians are paid double the minimum wage and overtime wages for all hours recorded on the biometric time clock; (3) First Honda's hourly pay plan does not include a piece rate; and (4) the hourly pay plan never "borrows" from a flag bonus to supplement the technicians' hourly earnings.

Following lengthy closing arguments that are not included in the record on appeal, the court took the matter under submission. On September 11, 2023, the court issued a statement of intended decision in favor of First Honda on all

claims. The court also stated that "[t]his Statement of Intended Decision will become the Court's Statement of Decision unless objections are received within the statutory time" and that "[a]ny party filing objections is directed to concurrently file findings on any issue to which an objection is taken." On October 2, 2023, appellants filed objections to the statement of intended decision along with a proposed statement of decision.

On October 25, 2023, the court issued its statement of decision. After noting that appellants' objections and proposed findings were untimely,[5] the court stated in pertinent part:

"The pay plan as introduced by First Honda on December 1, 2014 was not fully understood by either of the Plaintiffs. They each testified that they thought that flag hours were a bonus, and that their efforts to get an explanation from management were not successful. Plaintiffs were paid twice a month, and testified that their pay stubs lacked clarity as to how their pay was being calculated.

"The defendants' pay records of the Plaintiffs and other employees are massive.

"They comprise several thousand pages, and the parties have stipulated [to] their receipt into evidence. The Court, however, cautioned the parties that explanation of their contents would be necessary if they were to have any evidentiary value. Stipulated receipt into evidence satisfies the foundation requirements as exists for any document. It does not, however,

---

[5] Rule 3.1590(g) provides that any objections to a proposed statement of decision must be served and filed within 15 days after the proposed statement of decision has been served. Appellants do not dispute the court's finding that their objections and proposed findings were not timely filed pursuant to this rule.

10

make the document(s) persuasive of any issue they may be related to.

"Plaintiffs' proof consisted of testimony from Mr. Peter Rodby, a law clerk in the offices of The Green Law Group (Plaintiffs' counsel.)  The substance of Mr. Rodby's testimony was that he had reviewed all of the 5,200 pay stubs, the 2,100 time sheets, and the 14,000 flag sheets, and that he found deficiencies in the calculation of wages owed. . . .  There were, however, no examples displayed or explained . . . to illustrate the conclusions which Mr. Rodby had reached regarding the deficiencies in these records.  He was, in effect, asking the Court to take his word for it. . . .  This is an insufficient basis for Plaintiffs to satisfy their burden of proof.  With the virtually universal availability of virtual display equipment used on document intensive cases, this is perplexing.  Use of an Excel sheet did not solve this aspect of Plaintiffs' proof."

The court went on to find that "Plaintiffs have not sustained their burden of proof to demonstrate the essential elements of their various claims" and that a judgment would be entered in favor of First Honda.  Judgment was accordingly entered on November 21, 2023, and appellants timely appealed.

*The Hourly Pay Plan Does Not Violate The No Borrowing Rule*

Appellants first contend the trial court erred in finding that First Honda's pay plan does not violate the "no borrowing rule" as provided in *Gonzalez, supra,* 215 Cal.App.4th 36.  We conclude otherwise.

The facts regarding First Honda's pay plan are undisputed, and the application of law to undisputed facts in this context presents a question of law which we review de novo.  (*Boling v. Public Employment Relations Board* (2018) 5 Cal.5th 898, 912;

11

*Vasquero v. Stoneledge Furniture, LLC* (2017) 9 Cal.App.5th 98, 108.)

California wage and hour claims are governed by the Labor Code and a series of wage orders adopted by the Industrial Welfare Commission (IWC). (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026.) These wage orders set forth California's minimum wage requirements. (*Nisei Farmers League v. Labor & Workforce Development Agency* (2019) 30 Cal.App.5th 997, 1004, fn. 3 (*Nisei*).)

The controlling order here is Wage Order 4, which provides in relevant part that "[e]very employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise." (Cal. Code Regs., tit. 8, § 11140, subd. (4)(B).) Order 4 defines "'hours worked'" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." (*Id.*, subd. (2)(G).) Because First Honda's service technicians provide their own tools and equipment, they must be paid at least two times the applicable minimum wage. (*Id.*, subd. (9)(B).)

For guidance on the interpretation of Order 4, we look to the California Division of Labor Standards Enforcement (DLSE) Policies and Interpretations Manual (DLSE Manual). (DLSE, The 2002 Update of the DLSE Enforcement Policies and Interpretations Manual (Revised) (August 2019); *Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 554-555.) "The appellate courts considers the DLSE Manual 'to the extent

12

we find it persuasive.'" (*Lemm v. Ecolab, Inc.* (2023) 87 Cal.App.5th 159, 170, quoting *Alvarado, supra,* at p. 567.)

Citing Labor Code section 200, the DLSE Manual provides that the amount of money received as wages can be "a fixed sum, or it may be ascertained or determined by standard of time, task, piece, commission or by other method of calculation." (DLSE Manual, *supra*, at p. 2-2, § 2.4.2.) "Piece rate" or "'piece work'" is defined as "'Work paid for according to the number of units turned out.' [Citation.] Consequently, a piece rate must be based upon an ascertainable figure paid for completing a particular task or making a particular piece of goods." (*Id* at p. 2-2, § 2.5.1.)

"Under a piece-rate system, employees are not paid by the hour, but rather are compensated based on activities, tasks, or units of production completed [citations], such as the quantity of produce picked, the number of yards of carpet installed, or the number of miles driven." (*Nisei, supra*, 30 Cal.App.5th at p. 1003.) By comparison, "A bonus is money promised to an employee in addition to the monthly salary, hourly wage, commission or piece rate usually due as compensation. The word has been defined as: 'An addition to salary or wages normally paid for extraordinary work. An inducement to employees to procure efficient and faithful service.' [Citation.]" (DLSE Manual, *supra,* at p. 2-3, § 2.5.5; see also *id.* at p. 2-3, § 2.5.5.2 ["Bonuses are in addition to any other remuneration rate and are predicated on performance over and above that which is paid for hours worked, pieces made or sales completed. A bonus is paid over and above wages earned for extraordinary work performance or as an inducement to employees to remain in the employ of the employer"].)

Effective January 1, 2016, the Legislature adopted section 226.2, which specifically governs employees "compensated on a piece-rate basis for any work performed during a pay period." (*Ibid*.)  The statute codifies the requirement, as developed in caselaw, that employers must compensate employees at a rate no less than the applicable minimum wage, for "rest and recovery periods and other nonproductive time separate from any piece-rate compensation." (*Id.*, subds. (a)(1), (3)(A); *Nisei, supra,* 30 Cal.App.5th at p. 1006.)  Prior to 2013, employers in various industries used averaging to ensure employees working under a non-hourly compensation system, such as a piece-rate system, were being paid at least minimum wage for every hour worked in a given pay period.  (See *Bluford v. Safeway Inc.* (2013) 216 Cal.App.4th 864; *Gonzalez, supra,* 215 Cal.App.4th 36.)  *Bluford* and *Gonzalez* recognized that employees must be separately compensated for rest periods and other nonproductive times at the legal minimum wage or contractual hourly rate, and that a system wherein the employer meets the minimum wage requirement by averaging hourly compensation does not comply with the law. (*Bluford, supra,* at p. 872; *Gonzalez, supra,* at pp. 48-49.)

In *Gonzalez*, the court held that an employer's piece-rate system of paying automotive service technicians more than minimum wage for designated flag hours, but not making separate payments for non-flag hours, violated the minimum wage requirements, even though the technicians earned at least minimum wage when the employer averaged the flag and non-flag hours; the employer would supplement the technicians' pay if the flag hour pay fell short of the "minimum wage floor." (*Gonzalez, supra*, 215 Cal.App.4th at pp. 41-42, 48-49.)  In

14

reaching this conclusion the court adopted the reasoning of *Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314, in which this court held that hourly employees must be paid the minimum wage for each hour worked, such that an employer violates the minimum wage law if it averages employees' hours in a given pay period to compute its minimum wage obligation. (*Gonzalez*, at pp. 48-49, citing *Armenta*, at p. 324.)

Our holding in *Armenta* on this point established "the no-borrowing rule[.]" (*Oman v. Delta Air Lines, Inc.* (2020) 9 Cal.5th 762, 781 (*Oman*).) That rule provides that "[w]hatever the task or period promised as a basis for compensation . . . , an employer must pay no less than the minimum wage for all hours worked. [Citation.] The employer must satisfy this obligation while still keeping any promises it has made to provide particular amounts of compensation for particular tasks or periods of work. [Citation.] For all hours worked, employees are entitled to the greater of the (1) amount guaranteed by contract for the specified task or period, or (2) the amount guaranteed by the minimum wage. Whether a particular compensation scheme complies with these [Labor Code] obligations may be thought of as involving two separate inquiries. First, for each task or period covered by the contract, is the employee paid at or above the minimum wage? Second, are there other tasks or periods not covered by the contract, but within the definition of hours worked, for which at least the minimum wage should have been paid?" (*Id.* at p. 782.)

The trial court correctly found that First Honda's hourly pay plan does not violate the no borrowing rule. The hourly pay plan is plainly distinguishable from the compensation plan in *Gonzalez,* in which the employer averaged the piece-rate

15

payments made to their employees in an effort to meet the minimum wage requirements. (*Gonzalez*, *supra*, 215 Cal.App.4th at pp. 48-49.) Unlike the pay plan in *Gonzalez*, the hourly pay plan actually pays each employee for every hour recorded on the biometric time clock and merely provides the opportunity to earn "flag bonus pay" as a reward for efficiency. The Ninth Circuit recently (and correctly) recognized that a similar pay plan did not run afoul of *Gonzalez*. (*Williams v. J.B. Hunt Transport, Inc.* (9th Cir. 2025) 151 F.4th 1020 [pay plan did not violate *Gonzalez*'s no borrowing rule because the employer "always paid hourly wages, and then paid any piece-rate-based bonus pay on top of that pay. The hourly pay never changed; only the bonus pay did"].)

Appellants' attempts to characterize First Honda's hourly pay plan as unlawful are unavailing. Under First Honda's hourly pay plan, service technicians are paid at least double the minimum wage for every hour "on the clock," which includes any unproductive time when they are not actually performing any service work-related tasks. It is of no moment that the employees do not accrue any flag hours for their unproductive time because those hours only accrue for flagged tasks that are work-related as a means of providing a bonus for productivity and efficiency.

Moreover, appellants do not aid their position by offering hypothetical scenarios in which their total compensation under the hourly pay plan would have been the same under the former piece-rate plan it replaced. As First Honda aptly puts it, "[t]hat the total compensation paid could remain the same" under the provided hypothetical scenarios "is not indicative of a legal violation." As relevant here, it only matters whether First Honda's hourly pay plan "borrows" from any bonus an employee might earn for flag hours to cover the hourly rate (i.e., double the

minimum wage) to which the employee is entitled for for all hours on-the-clock.  It clearly does not do so.  Appellants' claim that the hourly pay plan violates the no borrowing rule accordingly fails.

*The Hourly Pay Plan Does Not Violate § 226.2*

Appellants fare no better in contending that First Honda's hourly pay plan violates section 226.2.  Even assuming that the hourly pay plan's "flag bonus pay" amounts to piece-rate compensation, appellants' claim under section 226.2 is based solely on their erroneous assertions that the plan does not compensate employees for rest periods or pay at least twice the minimum wage for all hours recorded on the biometric time clock.

Appellants rely on the same erroneous assertion in claiming they presented substantial and undisputed evidence that they each "worked thousands of hours of unproductive time for which no compensation was paid."  (Bold and capitalization omitted.)  They merely complain that they "had unproductive time when they were not working on cars, and therefore could not flag any hours."  They offer no evidence, however, that they were ever paid less than double the minimum wage or any overtime wages for all the time recorded on their biometric time cards, which includes any and all "unproductive time when they were not working on cars[.]"  Nor do they provide any evidence that they (or any other service technicians) were ever deprived of any flag bonus pay to which they were entitled under the hourly pay plan.  Accordingly, judgment was properly entered in First Honda's favor on this issue.

17

*Judgment Was Properly Entered In First Honda's Favor On Appellants' PAGA Claim*

Finally, appellants contend the trial court erred in entering judgment in First Honda's favor on their PAGA claim. In their opening brief, appellants claim they presented substantial and undisputed evidence that First Honda committed various Labor Code violations by (1) failing to to pay First Honda 's commissioned sales associates for rest periods and failing to pay them overtime wages; and (2) failing to pay First Honda lube technicians who have a "blended" rate of hourly pay sufficient wages for overtime and rest periods. In their reply brief, appellants make additional arguments and offer additional evidence in support of their PAGA claim.

The arguments raised for the first time in the reply brief are forfeited and accordingly we do not consider them. (*Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 518, quoting *Doe v. California Dept. of Justice* (2009) 173 Cal.App.4th 1095, 1115, internal quotation marks omitted [""Obvious considerations of fairness in argument demand that the appellant present all of his points in the opening brief. To withhold a point until the closing brief would deprive the respondent of his opportunity to answer it or require the effort and delay of an additional brief by permission."""].)

Moreover, appellants have failed to provide an adequate record for us to review their contentions regarding their PAGA claim. A "fundamental principle of appellate procedure [is] that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment.

18

[Citations.] . . . . 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. . . ." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) ""A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed."' [Citation.] 'Consequently, [the appellant] has the burden of providing an adequate record. . . . Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].'" (*Id.* at p. 609.)

The bench trial in this case took place over several days. The final day of trial (August 17, 2023) was devoted entirely to the closing arguments, and the parties spent the better part of that day presenting those arguments. Appellants, however, did not include the reporter's transcript of that final day of trial in their designation of the record on appeal, nor did they include any trial briefs in their appendix. We thus have no record of the arguments appellants made in support of their PAGA claim or the specific damages they urged the court to award them. Moreover, the one-and-a-half-page statement of facts in appellants' opening brief makes no mention of the evidence upon which the PAGA claim is based. (See Cal. Rules of Court, use 8.204(a)(2)(C) [appellant's opening brief must include "a summary for the significant facts"]; see also *Nwosu v. Uba* (2004) 22 Cal.App.4th 1229, 1246-1247 [appellant waived claim of insufficient evidence by failing to provide a proper statement of facts in his opening brief].)

Appellants also failed to include First Honda's PAGA brief in their appendix. Although the court's statement of decision makes no reference to that brief, First Honda's counsel referred

19

to the brief during trial and asserted in his opening statement that appellants' PAGA claim was invalid for, among other things, failure to exhaust administrative remedies because their PAGA notice did not sufficiently set forth the facts and theories upon which their claims were based. First Honda has reiterated this claim on appeal and we conclude it has merit with regard to the PAGA violations alleged in appellants' opening brief. We must affirm the judgment if it is correct for any reason, even if the trial court did not rely upon that reason in issuing its ruling. (*Orange Catholic Foundation v. Arvizu* (2018) 28 Cal.App.5th 283, 297, fn. 8.)

As a condition for bringing a PAGA claim, "an aggrieved employee acting on behalf of the state and other current or former employees must provide notice to the employer and the responsible state agency 'of the specific provisions of [the Labor Code] alleged to have been violated, including the facts and theories to support the alleged violation.'" (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 545.) Appellants' PAGA notice does not set forth the specific theories of liability they assert in their opening brief with regard to First Honda's sales associates and lube technicians, much less state any facts in support of those theories.

In any event, the evidence in the record does not compel a finding that First Honda committed the alleged PAGA violations. "'In reviewing a judgment based upon a statement of decision following a bench trial,' we 'apply a substantial evidence standard of review to the trial court's finding of fact.' [Citation.]" (*Symons Emergency Specialties v. City of Riverside* (2024) 99 Cal.App.5th 583, 596.) "'The substantial evidence standard of review takes on a unique formulation where, as here, "the trier fact has expressly

20

or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals.'" [Citation.] Under these circumstances "'"'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'"'" [Citations.]" (*Id.* at p. 597.)

Appellants fail to make such a showing here. They presented the judge with voluminous exhibits, had a law clerk testify that those exhibits contained evidence of various deficiencies, and then "ask[ed] the Court to take his word for it." The court correctly recognized that "[t]his [was] an insufficient basis for [appellants] to satisfy their burden of proof." As First Honda notes, appellants also made no effort to reconcile the referenced pay statements with the employees' biometric time cards—or review (or even seek discovery of) the lube technicians and sales employees' individual pay plans—to determine whether the alleged deficiencies reflected in the pay statements constituted actual evidence of Labor Code violations. (See *Oman*, *supra*, 9 Cal.5th at p. 781, citing Civ. Code, § 1636 [recognizing that "[t]he compensation owed employees is a matter determined primarily by contract" and that "[c]onsistent with general contract interpretation principles, the unit for which pay is promised should be determined based on the 'mutual intention of the parties as it existed at the time of contracting"].) Appellants also failed to obtain discovery of the supplemental sheets that First Honda's sales employees received in addition to the pay

21

statements that were admitted into evidence.  Substantial evidence thus supports the judgment in First Honda's favor on appellants' PAGA claim.

### Disposition

The judgment is affirmed.  Respondents shall recover costs on appeal.


YEGAN, Acting P.J.


We concur:


BALTODANO, J.


CODY, J.

Henry J. Walsh, Judge
Superior Court County of Ventura

_____

The Green Law Group and Matthew T. Bechtel, for
Plaintiffs and Appellants.

Thompson Coburn and Arthur F. Silbergeld, Keith J.
Rasher, Cara A. Strike, for Defendants and Respondents C.E.
Enterprises, Inc., and Ed Estey.

No appearance for Defendant and Respondent Darrell
Coletto.

Filed 11/18/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| GUSTAVO MORA et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> C.E. ENTERPRISES, INC., et al., <br><br> Defendants and Respondents. | 2d Civ. No. B337830 <br> (Super. Ct. No. 56-2018-00521275-CU-OE-VTA) <br> (Ventura County) <br><br> ORDER CERTIFYING OPINION FOR PUBLICATION [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed on October 21, 2025, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.


YEGAN, A.P.J.         BALTODANO, J.         CODY, J.